NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0007n.06

No. 09-4183

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 04, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CHIEH ANTHONY CHIEH, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| *Petitioner-Appellant*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| *Respondent-Appellee*. | ) | |

BEFORE:     SUHRHEINRICH, COLE, and COOK, Circuit Judges.

**COLE, Circuit Judge.**  Petitioner-Appellant Chieh Anthony Chieh petitions this Court for

review of a decision of the Board of Immigration Appeals ("BIA") which dismissed Chieh's appeal

from an order of the Immigration Judge ("IJ") denying Chieh's claims for asylum and withholding

of removal, and for relief under the Convention Against Torture ("CAT").  The BIA's opinion also

found no merit in Chieh's constitutional due process claim and affirmed the IJ's denial of his

application for voluntary departure.  We **AFFIRM** the BIA's opinion and **DENY** the petition for

review.

## I.  BACKGROUND

Chieh, a Liberian native, applied for asylum and related remedies but was denied all relief

at the conclusion of a hearing before the IJ held on December 4, 2007.  At his asylum hearing, Chieh

maintained that agents of the now-deposed Liberian dictator Charles Taylor persecuted him on

account of his political beliefs. Specifically, Chieh testified that his persecution began on his return to Liberia on September 25, 2002 from a trip to Ivory Coast, where he had traveled to obtain a visa to visit the United States to attend a conference related to his business, which sold broadcasting equipment to the Liberian Broadcasting System. Before arriving in Monrovia, Liberia the bus on which Chieh was traveling stopped at a security checkpoint; he and the other passengers were ordered to step out of the bus for inspection. The officers performing the inspection asked Chieh to open his briefcase and found currency equivalent to $300, a letter from an organization called Friends of Brumskien requesting a contribution to sponsor a fellowship, and documents reflecting bank transactions. Upon discovering these materials, the officers accused Chieh of meeting with dissidents to plot the overthrow of Taylor's regime while he was in Ivory Coast. The officers arrested Chieh, took his shoes and beat him, eventually placing him in a holding cell. At about 7:00 p.m. a truck approached the facility where Chieh was being held; he overheard someone inquire into the location of the dissident. Out of fear that he would be taken to a base where prisoners are routinely executed, Chieh urinated on himself. Instead, Chieh was taken to a different location, an outpost of the National Security Agency ("NSA"), for interrogation. Chieh was transported to the NSA in a pick-up truck with his hands tied behind his back; he was beaten during the approximately hundred-mile ride.

When the truck arrived at the NSA, the officials guarding Chieh kicked him out of the truck and told him to crawl to his cell. At some point Chieh asked to use the restroom, but was told to relieve himself inside the cell. The next morning, he was taken to meet with Colonel Person, who told him he had been brought in for interrogation because the government had evidence that Chieh

had traveled to Ivory Coast to meet with dissidents. Person insisted that Chieh should confess to his involvement in dissident activity; Chieh refused. Chieh was then beaten, pushed down stairs and held in his cell for four days. One of the guards fed Chieh a loaf of bread each day of his detention. Chieh's lawyer secured his release through a personal connection to the director of the NSA. After leaving the NSA, Chieh spent six hours in the hospital and returned to the hospital for treatments over the course of the following two weeks. Chieh sustained injuries to his back, knees and eyes and claims that he wears glasses as a result of those injuries.

A few months later, in December of 2002, officials found Chieh at his home and beat him in front of his wife and toddler son, whom the officials also hit. A neighbor who witnessed the beating called Chieh's lawyer; he arrived at the scene and spoke with the officials, who then left but threatened to return. The officers returned on December 24 while Chieh and his family were attending mass. Again, a neighbor notified Chieh of the officials' presence at his house. Chieh then contacted his lawyer, who advised him to flee Liberia. Chieh followed his counsel's advice. After hiding in various residences outside of Monrovia, Chieh arrived in the United States on January 31, 2003. Chieh applied for asylum and related remedies a few months after that.

The IJ found Chieh's testimony incredible based on various inconsistences and additionally held that Chieh's asylum claim would fail even if his story were credited because a democratically accountable government had replaced the regime that had persecuted him. Chieh's requests for withholding of removal, relief under the CAT, and voluntary departure, were also rejected. Chieh appealed to the BIA, which issued an opinion affirming the IJ's adverse credibility finding and the alternate holding that changed country-conditions negated his claim even if his testimony were

credible, and rejecting the argument that his persecution was so severe that he qualifies for asylum even absent a well-founded fear of future persecution. The BIA also denied Chieh's withholding and CAT claims, rejected his request for voluntary departure and found that the IJ had not trammeled his due process rights. This timely petition for review followed.

## II. ANALYSIS

Chieh contends that the BIA erred in upholding the IJ's finding that (1) his testimony was incredible; (2) changed country conditions overcome the presumption that Chieh's fear of future persecution was well-founded, even if his story were credited; and (3) the persecution to which Chieh testified was not severe enough to entitle him to asylum absent a well-founded fear of future persecution. As Chieh's claims fail even if we credit his testimony, we need not reach his first argument. *See Djokovic v. Mukasey*, 273 F. App'x 505, 511 (6th Cir. 2008) (declining to review IJ's credibility determination where affirming on grounds of changed country conditions). We address the remaining issues in turn.

## A. Standard of Review

Where, as here, the BIA issues a separate opinion adopting the IJ's decision and including supplementary findings, we review the BIA's decision as the final agency determination and evaluate the IJ's decision where the BIA adopted the IJ's reasoning. *See Koita v. Mukasey*, 314 F. App'x 839, 842-43 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)), and *Patel v. Monzales*, 470 F.3d 216, 218 (6th Cir. 2006)). We reverse the BIA "only if the applicant can prove that the evidence *compels* a contrary conclusion." *Id.* (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006)) (emphasis added).

A petitioner may qualify for asylum if he demonstrates that he is a refugee: an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

**B.      Changed Country Conditions in Liberia**

Assuming that Chieh was persecuted in the past, he is afforded a presumption that he will be persecuted in the future. *See Ceraj v. Mukasey*, 511 F.3d 583, 592 (6th Cir. 2007). But that presumption can be rebutted if the government shows by a preponderance of the evidence that "conditions in the applicant's country have changed." *Id*. (internal quotation marks omitted). Here the BIA found that Taylor's removal from power, and the salutary changes flowing from that ouster, established that Chieh's fear of future persecution in Liberia was not well founded. We must uphold this finding if it is supported by substantial evidence and unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006) (evaluating challenge to IJ's changed country conditions finding under substantial evidence standard applicable to factual findings); *Precaj v. Holder*, 376 F. App'x 553, 561-562 (6th Cir. 2010) ("The existence of changed country conditions is a question of fact.") (citing *Pepaj v. Mukasey*, 509 F.3d 725, 728 (6th Cir. 2007)).

Chieh has not pointed to any evidence demanding a different result. The sparse facts Chieh musters to show that he will be persecuted on return to Liberia are too insubstantial to show that his fear of persecution in the future is well-founded. Against the sea-change that Taylor's removal brought to Liberia, Chieh notes that the Liberian government continues to arrest persons arbitrarily

and detain individuals without charge for longer than the forty-eight hours the Liberian Constitution permits; he adds that there is also friction between ethnic groups that creates social and political tension. *See* U.S. Dep't of State, Country Reports on Human Rights Practices for Liberia ("Country Reports") (2005, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61577.htm, http://www.state.gov/g/drl/rls/hrrpt/2006/78742.htm. None of these facts, however, shows that Chieh will be singled out for mistreatment by the new Liberian regime. Chieh testified that he was persecuted because of his membership in a political organization that Charles Taylor believed to have designs on his authority. With Taylor's ouster, the motive for persecuting Chieh and others like him falls away—precisely because the dreaded end that spurred Taylor to persecute Chieh came to pass.

To be sure, Taylor's overthrow does not mean that no petitioner can credibly fear persecution in Liberia. But for those like Chieh, whose fears are anchored in a power structure that no longer exists, the regime change does mean that theories of future persecution that fail to account for this new reality will not suffice. Asylum applicants always bear the burden of offering "reasonably specific information showing a real threat of individual persecution," *Harchenko v. I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004), though the intractable brutality of most persecuting regimes means that this requirement is, in many instances, no great obstacle. It is a barrier here, however. Liberia has new leadership, reasonably democratic elections and less violence than it once did, making it far from obvious how and why Chieh would be persecuted on his return. *See generally* Country Reports (2005, 2006, 2009). Chieh, for his part, has not filled in the picture, so his argument fails.

Chieh is correct that the Liberian government sometimes arrests people arbitrarily and holds them for longer than forty-eight hours without charge. *See* Country Reports (2005, 2006). Yet for any of these circumstances to amount to persecution they would have to be undertaken on account of a Liberian's political beliefs, race, religion, or some other protected characteristic. *See* 8 U.S.C. § 1101(a)(42) (defining refugee to require persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion"). Chieh puts forth no evidence of that crucial nexus, much less a nexus that parallels the grounds—anti-Taylor political beliefs and Khran ethnicity—forming the basis of his own purported persecution. *See Camara v. Holder*, 349 F. App'x 86, 91 (6th Cir. 2009) ("A well-founded fear of future persecution can be based either on a likelihood of harm specifically targeted at the applicant or a pattern or practice of harm to others similarly situated."); *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir. 2004) ("Because a well-founded fear of persecution can be based upon what has happened to others who are similarly situated, it is necessary, in considering an applicant's asylum petition, to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities.") (internal quotation marks and citation omitted).

Chieh's reliance on the continued presence of ethnic tensions suffers from the reverse problem: nexus, but no governmental mistreatment. Chieh has not shown that these tensions lead the government to single out his own (Khran) or any ethnicity for persecution. Accordingly, we affirm the BIA's denial of Chieh's asylum claim based on the changed country conditions in Liberia.

## C.      Humanitarian Asylum Relief

Even in the absence of a well-founded fear of future persecution, Chieh urges that he is entitled to a grant of asylum based on the severity of his past persecution. While the attorney general has discretion to grant asylum to petitioners who have "'suffered under atrocious forms of persecution,' even where there is little likelihood of future persecution," *Ben Hamida v. Gonzales*, 478 F.3d 734, 740 (6th Cir. 2007) (quoting *Matter of Chen*, 20 I. & N. Dec. 16, 19 (1989)), it is the rare case that presents facts ghastly enough to qualify. *See id.* (citing *Vaduva v. I.N.S.*, 131 F.3d 689, 690 (7th Cir. 1997) (past persecution is seldom "so severe that it would be inhumane to return the alien to his native country even in the absence of any risk of future persecution")). The BIA found that Chieh did not merit this relief, citing in support *In re N-M-A*, 22 I. & N. Dec. 312 (BIA 1998) and *Djokovic*, 273 F. App'x 505, both of which denied humanitarian asylum because the past persecution of the petitioner was insufficiently severe.

We review the BIA's decision to deny humanitarian asylum for abuse of discretion. *See Mbodj v. Holder*, No. 08-3165, 2010 WL 3521932 at *1, *5 (6th Cir. Aug. 31, 2010) (unpublished) (reviewing humanitarian denial for abuse of discretion); *Djokovic*, 273 F. App'x at 513 ("we cannot hold that the IJ abused her discretion" to deny asylum on humanitarian grounds); *Mambwe v. Holder*, 572 F.3d 540, 550 (8th Cir. 2009). Given the deferential standard of review and the high bar for humanitarian asylum, we uphold the BIA's finding. Chieh's alleged persecution, while serious, does not approach the horrific mistreatment that typically qualifies petitioners for this discretionary relief. *See Djokovic*, 273 F. App'x at 513 (citing in support of denial of relief cases where petitioners were persecuted much more severely than Djokovic and denied humanitarian asylum); *cf. Cutaj v.*

*Gonzales*, 206 F. App'x 485, 492 ("the concept of humanitarian asylum was designed for the case of the German Jews, the victims of the Chinese Cultural Revolution, survivors of the Cambodian genocide, and a few other such extreme cases") (internal quotation marks omitted)); *Pergega-Gjonaj v. Gonzales*, 128 F. App'x 507, 512-13 (6th Cir. 2005) (denying humanitarian asylum where petitioner was subjected to four months of hard labor and starvation and atrocities committed against extended family members); *Potka v. Ashcroft*, 65 F. App'x 50, 51 (6th Cir. 2003) (petitioner denied humanitarian asylum where forced to watch murdered mother's body being dragged through the streets); *In re B-*, 21 I. & N. Dec. 66, 67, 72 (BIA 1995) (granting humanitarian asylum to petitioner who was imprisoned in Afghanistan for thirteen months, including three months during which he was subjected to sleep deprivation, beatings, and electric shocks applied to his fingers); *In re Chen*, 20 I. & N. Dec. 16, 19-21 (BIA 1989) (granting humanitarian asylum to survivor of Chinese Cultural Revolution who had been subjected to continuing interrogation, beatings, and periodic imprisonment over the course of more than nine years, leaving him physically debilitated and emotionally traumatized).

**D.      Withholding of Removal and Relief Under the Convention Against Torture**

As Chieh did not meet the lower threshold for a grant of asylum, he necessarily failed to qualify for withholding of removal. *See Ben Hamida*, 478 F.3d at 741. Nor has Chieh shown it is more likely than not that he will be tortured if returned to Liberia, the test for relief under the CAT. *Id.* Chieh's reliance on a single citation to the 2006 Country report finding that torture occurs in Liberia despite constitutional prohibition, is facially inadequate to qualify for CAT relief. The bare fact that torture occurs sheds no light on the *probability* that Chieh, or anyone else, will be tortured

in Liberia. Absent any evidence of how *likely* it is that Chieh will be tortured upon return to Liberia, we cannot find that this eventuality will "more likely than not" occur. *Id*. (citing 8 C.F.R. § 208.16(c)(2)).

**E.     Violation of Due Process Rights**

Chieh also claims that the IJ's mischaracterization of his testimony and the BIA's affirmance of that finding violated his right to due process of law under the Fifth Amendment to the U.S. Constitution. A petitioner's right to due process is abrogated only where "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005). "To prevail on a due process challenge to deportation proceedings, [an alien] must show error and substantial prejudice. A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; we will not simply presume prejudice." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (quotation omitted). "The alien carries the burden of establishing that [he was] prejudiced . . . or denied . . . fundamental fairness in order to prove that he has suffered a denial of due process." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir.2005).

Because Chieh has not attempted to show prejudice—and cannot do so—we need not decide whether the IJ and the BIA erred in characterizing his testimony, or whether the alleged error rises to the level of a constitutional deprivation. Indeed, Chieh's due-process claim hangs on the purported insufficiency of the IJ's credibility finding, yet Chieh's credibility is immaterial to the disposition of this case. An error committed in a determination that does not go to the merits of a

- 10 -

claim is harmless, as Chieh cannot show "that the alleged violation affected the outcome of the proceedings." *Gishta*, 404 F.3d at 979.

Finally, Chieh finds further constitutional fault in the IJ's denial of his request for voluntary departure and the BIA's affirmance of that ruling. As a general matter we lack jurisdiction to review denials of requests for voluntary departure. *See* 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure"). But we can review constitutional claims, and Chieh has dressed his arguments up in the required garb. *See Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006).

The discretionary denial of voluntary departure is not a cognizable due-process violation, so Chieh's protests regarding the manner in which the BIA and the IJ adjudicated that request—particularly their reliance on his criminal history—are inapposite. *Id.* at 220 (a failure to grant voluntary departure is not a due process violation as it does not deprive movants of a liberty interest). And Chieh's complaint that the IJ neglected, in abrogation of mandatory regulations, formally to inform him of his potential eligibility for voluntary departure—even though the IJ reached the merits of the issue—fails because Chieh *requested* voluntary departure at his initial removal hearing on January 7, 2005. (January 7, 2005 Hr'g Tr., Admin. R., at 189.) It is hard to understand how Chieh can credibly maintain that he was prejudiced by the IJ's failure to inform him of his eligibility for relief *that he himself requested*. To the extent this redundant procedural omission could be considered erroneous, we find it harmless.

## V. CONCLUSION

We **AFFIRM** the BIA's order and **DENY** the petition.