NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0074n.06

Nos. 15-4332/16-3585

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 26, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SIMARJIT SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| SALLY Q. YATES, Acting Attorney General of the United States, | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Simarjit Singh is a native and citizen of India who entered the United States in 2010 without inspection. He applied, unsuccessfully, for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). His appeal to the Board of Immigration Appeals (BIA) was also unsuccessful and he now petitions for review of the BIA's final order of removal. He separately seeks review of the BIA's denial of his motion to reopen his removal proceedings for administrative closure. We **DENY** both petitions.

**I**

**A**

Singh is a member of the Sikh faith and was born into a "politically active family" in Punjab, India. A.R. 343. He entered the United States without inspection or parole in August 2010. After a credible-fear interview, the Department of Homeland Security (DHS) began

removal proceedings. Singh conceded removability, but requested asylum, withholding of removal, and protection under the CAT.

Singh's asylum application centered on his joining and actively participating in the Shiromani Akali Dal Amritsar Party (Akali Dal), a Sikh-based political party in India. Singh claims that as a result of his activities with Akali Dal (which included attending rallies and postering), he was attacked twice by members of the Congress Party, first in October 2009 and again in March 2010. His asylum application asserted that on the first occasion, he was stopped by six or seven unidentified persons whom he recognized as Congress Party members, who told him to join their party. When he refused, they fired a rifle close to him, prompting him to abandon his motorbike and flee. Singh's application asserted that on the second occasion, he was confronted by Congress Party members while he was at a party in a park with friends. After the Congress Party members began shooting rifles in the air, he and his friends fled. Singh asserted that he could not obtain protection from local police, who were bribed by the Congress Party. After the second incident, Singh fled India by plane to Vietnam in June 2010 and took a boat to Mexico before entering the United States.

Over a year after making his first application, Singh filed an amended application changing his story regarding the two incidents. In his original statements, these incidents ended with his running away, but the amended application describes far more serious encounters, including that Singh was confronted by Congress Party member Kartar Singh (Kartar), who warned Singh that he would face "dire consequences" if he refused to join the Congress Party; that Kartar was among the group of six or seven who first stopped Singh while he rode his motorbike; that Singh did not flee after the rifle was fired, but was rather held down and beaten by the group with their bare hands and sticks; that Singh lost consciousness and later awoke at

home and was treated by a village nurse; that local police refused to accept his report against Kartar, noting that Kartar had already made a report against Singh; and that after leaving the police station, two of Singh's attackers approached him and demanded he join the Congress Party. Regarding the second incident in the park, the amended application states it occurred in late March and that although many of Singh's friends fled, he was grabbed by the Congress Party members, beaten, and told that he had two months to join their party or else he would be killed and his house destroyed. Singh then fled Punjab and went to Delhi with his father. In his amended application, Singh asserts that he left India in June 2010, and traveled through Bangkok, Vietnam, Moscow, Cuba, Paris, Guatemala, and Mexico en route to the United States, which he entered less than two months after leaving India. He explained that his account of his travel changed after he saw films on the Internet featuring those places, which he recognized as places he had been to on his journey to this country.

After Singh testified at his asylum hearing, the immigration judge (IJ) commented that he leaned toward denying Singh's application and was considering the Government's request that the application be held frivolous. As potential grounds for such a finding, the IJ noted over a dozen implausible inconsistencies between Singh's applications and documentation, his testimony, and his statements to an asylum officer. Among these inconsistencies were (1) whether the second incident at the park happened in the first or final week of March 2010 (with Singh eventually admitting he did not know when in March the incident happened), (2) Singh's failure to mention his adversary Kartar's presence at the March incident in his application followed by testimony that Kartar was indeed present, (3) the submission of a doctor's report that misstated Singh's age and contradicted his testimony that he never saw a doctor in connection with the attacks, and (4) the failure of a local elected official's affidavit to

vouch for Singh's membership in Akali Dal (instead merely noting his family's support for the party).

The IJ allowed Singh a continuance to explain these and other inconsistencies, specifically to present proper documentation corroborating his story. At a subsequent hearing over seven months later, Singh appeared without additional documentation, explaining that he could not obtain it because his father, a farmer, had been hospitalized for months following a car accident and was otherwise busy with the growing season. Singh did not, however, provide documentation confirming his father's accident or hospitalization, although he stated it was the subject of an Internet-available news article. Singh further explained that he was unable to obtain corroborating documentation through anyone else in India. The IJ continued the hearing until February 2014 so that Singh's father could be discharged from the hospital and send the documentation. At the next hearing, Singh still had not submitted additional documentation and rested his case on the record.

The IJ denied Singh's application as to each claim, held his asylum application to be deliberately frivolous, and ordered his removal. In his order, the IJ found that Singh was not credible "about anything" and that his claims were made up "out of nothing." Order, A.R. 71. With regard to asylum, the IJ concluded that Singh's total lack of credibility meant that he could not satisfy the definition of a refugee, particularly because he could not show past persecution.[1] Acknowledging the seriousness of a frivolous-application finding, the IJ specifically found that based on numerous inconsistencies, Singh lied about his membership in

---

[1] Asylum may be granted to refugee aliens. 8 U.S.C. § 1158(b)(1)(A). A refugee is one "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his native] country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion." *Id.* at § 1101(a)(42)(A). An applicant bears the burden of establishing his eligibility for asylum, either through his own credible testimony or with corroborating evidence. *Id.* at § 1158(b)(1)(B)(i)–(ii).

Akali Dal and about the violent incidents with Congress Party members, and that both lies were material to his claim for asylum.

With regard to Singh's claim for withholding of removal, the IJ noted that Singh could not meet the lower burden of proof for asylum and thus could not meet his burden for withholding of removal.[2] *See Mohammed v. Keisler*, 507 F.3d 369, 372 (6th Cir. 2007). Finally, with regard to Singh's CAT claim, the IJ noted that Singh had failed to prove his membership in Akali Dal and prior harm–much less that such harm was instigated by or consented to by Indian government officials–and thus failed to meet his burden on that claim as well.[3] Further, the IJ found that if removed to India, Singh could avoid danger by relocating within the country.

On appeal, the BIA affirmed the IJ's adverse-credibility determination, finding that it was not "clearly erroneous." *See* 8 C.F.R. § 1003.1(d)(3)(i). The BIA noted that the IJ's determination was "based on specific, cogent reasons, including discrepancies and omissions between the respondent's testimony, his application, and the documentary evidence" and cited the inconsistencies mentioned in the IJ's order, including the filing of a doctor's note when Singh claimed not to have received medical attention and his inconsistency on what countries he traveled through on his way to the United States. A.R. 4. Singh did not, the BIA found, present convincing arguments on appeal sufficient to disturb the IJ's finding. In response to Singh's claim that the inconsistencies were relatively minor and did not go to the heart of his asylum

---

[2] An alien may not be removed to his native country if his "life or freedom would be threatened in that country because of [his] . . . membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien has the burden of demonstrating a "clear probability" of persecution if he is removed to his native country. *Mohammed*, 507 F.3d at 372. This more-likely-than-not burden exceeds the "well-founded fear" burden applicable to asylum claims. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (holding that demonstrating asylum eligibility does not require a showing that persecution is more likely than not).

[3] An alien may not be removed to his native country if he establishes that it is more likely than not that he will be tortured there. 8 C.F.R. § 1208.16(c)(2). "Torture" is defined by the CAT's implementing regulations. *See* 8 C.F.R. 1208.18(a). Although aliens need not demonstrate any of the five statutory grounds for asylum or withholding-of-removal eligibility for a CAT claim, the proof required to demonstrate that *torture* is more likely than not is more stringent than the proof required to demonstrate that *persecution* is more likely than not. *See Berri v. Gonzales*, 468 F.3d 390, 397–98 (6th Cir. 2006).

claim, the BIA noted that an adverse-credibility finding can permissibly rest on inconsistencies that do *not* go to the heart of the claim. *See El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

In affirming the IJ's denial of Singh's asylum application, the BIA noted that Singh could not satisfy the more stringent clear-probability-of-persecution standard required for withholding of removal and thus affirmed that denial as well. *See* 8 C.F.R. § 1208.16(b); *see also Mohammed*, 507 F.3d at 372. The BIA also upheld the IJ's denial of Singh's CAT claim because he did not "establish that he faces a clear probability of torture in India by, at the instigation of or with the consent or acquiescence or willful blindness of the government." A.R. 5. *See Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006). Further, because Singh's appeal on the CAT claim failed to challenge the IJ's finding that he could avoid danger by relocating, the BIA concluded that he had waived a challenge to this finding. Finally, the BIA concluded that although it was a close case, a preponderance of the evidence did not support the court's finding that Singh had knowingly and deliberately fabricated material aspects of his asylum application. *See* 8 C.F.R. § 1208.20. It accordingly sustained Singh's appeal of the frivolousness finding. Singh filed a petition for review from these denials.

**B**

After the BIA affirmed the IJ's removal order, Singh married a United States citizen, Cynthia Singh (Cynthia), who filed a family-based immigrant visa petition on Singh's behalf with the United States Citizenship and Immigration Services (USICS). The petition was approved during the pendency of this appeal.

After his marriage to Cynthia and her filing a visa petition on his behalf, Singh moved the BIA to reopen his removal proceeding and administratively close it, which would remove the

regulatory bar to his seeking an unlawful-presence waiver.[4] Upon an approval of the family-based immigrant-visa petition and a grant of the motion to reopen, Singh would become eligible to seek a provisional unlawful-presence waiver. The waiver would allow him to return to India for consular processing of his family-based immigrant visa.[5] The DHS opposed Singh's motion to reopen, emphasizing that Singh had not established that his marriage was bona fide, and asserting that he was otherwise "undeserving" of reopening because of his lack of credibility in his removal proceedings. A.R. 286–87. In its denial of Singh's motion, the BIA noted that because Singh's visa petition was pending at the time, rather than granted, there was no basis for relief from removal and further that he failed to show a strong likelihood that his marriage to Cynthia was bona fide. Finally, it noted that its power to reopen was not a procedural cure-all and that Singh should raise a request for prosecutorial discretion directly with the DHS. Singh filed a separate petition for review from this denial.

## II

Singh claims two categories of errors in this consolidated appeal. First, he argues that the IJ erred in finding him incredible and that he in fact established that he was eligible for asylum, withholding of removal, and protection under the CAT. Second, he argues that the BIA inadequately explained its reasoning in denying his motion to reopen his case for administrative closure, or, in the alternative, that the BIA abused its discretion in denying his motion.

---

[4] Under prior DHS regulations, aliens subject to a final order were ineligible for provisional unlawful-presence waivers, as were aliens in removal proceedings, "unless the removal proceedings [were] administratively closed and ha[d] not been recalendared at the time of filing the [application for provisional unlawful-presence waiver]." 8 C.F.R. § 212.7(e)(4)(v) (2013).

[5] Even with an approved immigrant-visa petition, Singh is ineligible to adjust his status while in the United States because he entered the country without inspection or admission. *See* 8 U.S.C. § 1255(a).

**A**

This court reviews legal conclusions de novo, but with "deference to the BIA's reasonable interpretation of the statutes and regulations." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009) (quoting *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009)). When the BIA issues a reasoned decision rather than summarily affirming the IJ's decision, we review both. *Id.* The court reviews factual findings, including credibility determinations, for substantial evidence. *Slyusar v. Holder*, 740 F.3d 1068, 1073 (6th Cir. 2014). This is a deferential standard and the BIA's decision will be upheld so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quotation omitted). Administrative factual findings are "conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added).

An applicant bears the burden of demonstrating his eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). Where his testimony is not "believable, consistent, and sufficiently detailed to provide a plausible and coherent account," he must corroborate "virtually every significant instance of persecution" claimed. *Gaye v. Lynch*, 788 F.3d 519, 528 (6th Cir. 2015) (quotations omitted). Failure to provide reasonably expected corroboration is itself grounds for denial of an application for asylum. *See id.*

Immigration courts may make adverse-credibility determinations on the basis of "any inaccuracies or falsehoods in [the applicant's] statements, without regard to whether any inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). Credibility determinations are made on the totality of the circumstances. *Khozhaynova v. Holder*, 641 F.3d 187, 193 (6th Cir. 2011).

An adverse-credibility finding that is fatal to an alien's asylum claim is also fatal to the alien's withholding-of-removal and CAT claims. *See Slyusarr*, 740 F.3d at 1074.

Here, the IJ found that Singh lacked credibility "about anything," Order, A.R. 71, after noting over a dozen inconsistencies presented by Singh, which he never explained (with corroboration or otherwise). The BIA cited several of the major inconsistencies noted by the IJ—including inconsistencies over Kartar's role in the attacks, the timing of the attacks, whether Singh received medical treatment after the attacks, and how he traveled to the United States. Further, against Singh's argument that these inconsistencies were minor, the BIA correctly noted that even inconsistencies that do not reach the heart of the claim may support an adverse-credibility finding.[6] *El-Moussa*, 569 F.3d at 256. In reviewing the documentation that Singh did provide, the BIA found it insufficient to rehabilitate his incredible testimony. Indeed, some of the documents—such as the doctor's note and the affidavit of the local official—raised more questions than they answered.

Because the IJ's and BIA's decisions that Singh lacked the credibility to establish his eligibility for asylum (including that he was ever persecuted or even a member of the political party he claimed to be a part of) is adequately supported, it follows that he could not satisfy the more stringent burdens of proof required for his withholding-of-removal and CAT claims. *Mohammed*, 507 F.3d at 372.

**B**

This court has jurisdiction to review the denial of a motion to reopen. 8 U.S.C. § 1252(a). Because "[t]he decision to grant or deny a motion to reopen . . . is within the

---

[6] The most striking inconsistencies, however, do go to the heart of the claim. In his first application, Singh reported no attacks at all, just that he was threatened and fled. In his amended application, however, these incidents resulted in his being beaten by Congress Party members, the first time to the point of unconsciousness. These attacks are central events in Singh's claim, and it seems highly implausible that running away versus being brutally beaten were minor details that he misremembered or that were lost in translation in his consultations with counsel.

discretion of the [BIA]," 8 C.F.R. § 1003.2(a), we review the BIA's denial for abuse of discretion. *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citation omitted). In determining whether the BIA abused its discretion, we must decide "whether the denial of the motion to reopen was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (internal alteration and quotation omitted).

Article III's case-or-controversy requirement restricts the court to considering only a "live controversy" and forecloses its consideration of moot claims. *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). Because this court must analyze regulations as they now exist, a change in regulation may moot a claim. *Cf. Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 644 (6th Cir. 1997) (discussing mootness due to intervening statutory amendment). Mootness is shown when even a favorable judicial decision will not redress the injury claimed. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

Singh has been approved for an immigrant visa, but because he is unlawfully present, he is unable to adjust his status while in the United States. Instead, he is required to adjust his status through consular processing in India and requires a provisional waiver of unlawful presence to do so. 8 U.S.C. § 1255(a). He sought reopening and administrative closure of his removal case in order to qualify for the waiver.[7]

Under a prior DHS regulation, Singh was ineligible for a waiver because he was subject to a final order of removal; unless the proceedings were reopened (making them no longer "final") and then "administratively closed and . . . not . . . recalendared at the time of filing the [application for provisional unlawful-presence waiver]" (making them no longer "pending"), Singh was ineligible to apply for a waiver. 8 C.F.R. § 212.7(e)(4)(v) (2013). The Government

---

[7] *See* notes 4 and 5 and accompanying text.

argues that Singh's pursuit of this relief on appeal is moot due to intervening regulatory changes regarding eligibility for a provisional unlawful-presence waiver. The amended regulation provides Singh with a new avenue to become eligible for a waiver that does not require that the final order be set aside. He may now apply to USICS for consent to reapply for admission and then seek a waiver.[8] Singh acknowledges this, but asserts that the amendment merely opens up an alternative avenue for him to obtain the ultimate relief he seeks—to become eligible for a waiver—and thus the change does not moot his claim. The new regulation does not on its face rule out the old practice, but it does change the landscape for petitioners in Singh's position, who no longer must obtain relief from the final order.[9]

In any event, the BIA did not abuse its discretion in denying Singh's motion, especially given the circumstance that the family-visa petition was not yet granted. Further, as the Government points out, the amended regulation has obviated the need to seek reopening by allowing for an application for consent to reapply for admission, even when there is a final removal order. Thus, even were we to remand the motion to reopen for reconsideration, the BIA would have additional cause to deny it.

## III

For the foregoing reasons, Singh's petitions are **DENIED**.

---

[8] An alien who is "subject to an administratively final order of removal" is no long ineligible for a provisional unlawful-presence waiver if he "has already filed and USICS has already granted, before [he] applies for a . . . waiver . . . , an application for consent to reapply for admission . . . ." 8 C.F.R. § 212.7(e)(4)(iv) (2016).

[9] *See* 8 C.F.R. § 212.7(e)(4)(iii) (2016). This provision provides that "an alien is ineligible for a provisional unlawful presence waiver . . . if . . . [t]he alien is in removal proceedings, *in which no final order has been entered*, unless the removal proceedings are administratively closed and have not been recalendared at the time of filing the application for a provisional unlawful presence waiver . . . ." (emphasis added).