NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0184n.06

No. 16-3751

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GURPREET SINGH, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Mar 24, 2017 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| JEFF B. SESSIONS, Attorney General of the United | ) | ON PETITION FOR REVIEW |
| States, | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| Respondent. | ) | APPEALS |
| | ) | |
| | ) | |

BEFORE: BOGGS, BATCHELDER, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Gurpreet Singh is a native and citizen of India. After entering the United States in 2013, he was interviewed by an asylum officer, paroled, and charged with inadmissibility. An Immigration Judge (IJ) denied Singh's application for asylum, for withholding of removal, and for protection under the Convention Against Torture (CAT), and ordered his removal. The Board of Immigration Appeals (BIA) dismissed Singh's appeal. Singh now seeks review of the BIA order dismissing his appeal. For the reasons below, Singh's petition for review is **DENIED**.

## I. Factual Background

Singh is from Punjab, India, and is a member of the Sikh faith. He is 25 years old and joined the Shiromani Akali Dal Amritsar Party (Akali Dal), a Sikh nationalist party, when he was 19 or 20 years old. Singh's political activities, which consisted mostly of postering and promoting rally attendance, resulted in trouble with members of the rival Badal Party. In

December 2011, after Singh put up posters for Akali Dal, five or six members of the Badal Party confronted him and a companion while the pair traveled through Qadian, a city near Singh's village of Nathpur. They warned Singh to leave Akali Dal and join the Badal Party. His attackers pushed him to the ground and struck him on his back, arms, and legs, including with what resembled a baseball bat. Singh's companion escaped at some point during the attack and has since left Punjab. The attackers fled when Akali Dal members came to Singh's rescue. Singh went to the hospital following the attack, and afterward tried to report the attack to local police. The police officers Singh spoke to refused to take his complaint, suggesting that they would lose their jobs if they investigated the Badal Party.

In March 2012, while Singh shopped for clothes in Qadian, his attackers struck again. A man grabbed Singh and dragged him out of the store into the street where more attackers joined and beat him with their belts. Two of the attackers hit him with cricket bats. Singh recognized the attackers as the same Badal Party members who had attacked him a few months earlier in December. This time, the attackers said they would kill him. Singh escaped to a nearby store after a shopkeeper and others came to his rescue.

After each of the attacks, Singh went to the hospital for what he conceded were "superficial injuries." A.R. 167. According to a letter from the hospital submitted in support of his application, it treated Singh on two occasions. The hospital first admitted Singh after the December 2011 attack with "multiple injuries including abrasions, lacerations and soft tissue injuries on arms, legs and back[.]" A.R. 373. After the March 2012 incident, Singh was admitted to the hospital with "soft tissue injuries [along with] swelling and bruises on head, legs and back." *Id.* The hospital's letter did not identify what caused Singh's injuries.

2

After the second attack, Singh traveled to Delhi. Afraid to venture out in public, he stayed in his hotel room because he feared that a member of the Badal Party or an allied party might inform the Badal Party members in Punjab of his location. Despite his fears, no one threatened or harmed Singh during his time in Delhi. Singh spent about one month in Delhi and left for Dubai in May 2012. He traveled to Guatemala and Mexico before entering the United States in March 2013. In his credible-fear interview, the asylum officer determined Singh's claims "could be found credible in a full asylum or withholding of removal hearing." A.R. 420. He was paroled and the Department of Homeland Security (DHS) charged him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry document). He conceded removability and filed applications for asylum, withholding of removal, and protection under the CAT.

## II. The IJ Decision

After a hearing, the IJ found that Singh's testimony and corroboration did not establish past persecution. Singh's corroborating evidence included a letter from the hospital that treated him after the attacks and a letter from the president of Akali Dal. The IJ found that the hospital's letter detailing Singh's injuries did not establish past persecution because it did not identify the cause of those injuries. The party president's letter did not detail the specific attacks against Singh but instead discussed generally the status of Sikhs in India and suggested Singh would be subject to false accusations of criminal conduct by police, fears not asserted by Singh himself. An affidavit from Singh's father discussing the attacks was not considered to corroborate past persecution because it was submitted after Singh's hearing and was admitted "only as it relates to [Singh's] ability to relocate within India." A.R. 65.

The IJ found that Singh did not establish past persecution because he failed to corroborate his claim with reasonably available evidence, including affidavits from his parents, or letters from Akali Dal members or other witnesses describing the attacks.

The IJ also found that Singh did not establish a well-founded fear of future persecution. First, he did not provide sufficient evidence to show that the men who attacked him were still looking for him. Singh testified that the shopkeeper who witnessed the March 2012 attack told his parents that his attackers were still looking for him, but he provided no affidavits from his parents or the shopkeeper to support this claim. Second, a report Singh submitted as country-conditions evidence did not support his claim that he had a well-founded fear of persecution at the hands of Badal Party members. The report mentions instances of harassment, violence, and force used by the Badal Party against political rivals. These generalities, the IJ noted, "do[] not provide any detail" to support an objectively or subjectively reasonable claim of a well-founded fear of persecution. A.R. 66–67.

The IJ found that Singh failed to demonstrate he could not avoid persecution by moving to a different part of India. Although Singh argued that it would be "unreasonable and impossible" for him to relocate within India, the DHS submitted a report in rebuttal stating that there are no legal restrictions on Sikhs relocating within India. A.R. 394. The report also noted that, although some high-profile Sikh nationalists are at risk, people like Singh, who simply favor an independent Sikh state, are not targets.

Singh did not show that the Badal Party, whose influence is limited mostly to Punjab, would persecute him if he moved to another part of the country. Singh contended that if he attended temple in a new part of the country, news of his location would reach his hometown. Singh also expressed concern that word of his continued involvement with Akali Dal would get

back to his attackers. In an affidavit, Singh's father also expressed the view that Badal Party members would learn of his son's location and pursue Singh if he attended temple elsewhere in India. The IJ held that these were "speculative assertions" that did not meet Singh's burden of showing he would be unable to relocate within India. A.R. 68.

The IJ denied Singh's asylum application because he did not demonstrate that he had suffered past persecution, that he had a well-founded fear of future persecution, or that relocation to another part of India would be unreasonable.

The IJ also denied Singh's application for withholding of removal. To succeed on a claim for withholding of removal, an applicant must demonstrate a "clear probability" of persecution if removed to his native country. *Mohammed v. Keisler*, 507 F.3d 369, 372 (6th Cir. 2007). The "clear probability" standard is higher than the "well-founded fear" burden for asylum claims. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Because the IJ found that Singh did not meet the "well-founded fear" standard, he could not meet the more stringent "clear probability" standard. The IJ also denied his application for protection under the CAT because it found Singh did not show he would be subject to torture if he returned to India.

### III. The BIA Decision

The BIA affirmed the IJ's finding that the mistreatment Singh suffered did not constitute past persecution. The BIA also held that the IJ did not err by requiring corroborating evidence of past persecution, noting that when an IJ determines corroborating evidence is required, the applicant must provide that evidence unless he shows he does not have it or "cannot reasonably obtain" it. 8 U.S.C. § 1229a(c)(4)(B). It further found that Singh did not establish a well-founded fear of persecution by local or central police, the men who attacked him, or other members of the Badal Party if he were to relocate within India, which he could safely do. The

BIA found that because Singh could not meet the "lower statutory burden of proof required for asylum, it follows that he cannot satisfy the clear probability standard of eligibility for withholding of removal." A.R. 6. The BIA also affirmed the IJ's decision that the facts do not support protection under the CAT.

## IV. Discussion

### A

The petition for review raises five issues. First, Singh contends he introduced sufficient evidence to show past persecution. Second, he argues that the corroborating evidence the IJ required was not "reasonably available." Third, he asserts he has a well-founded fear of future persecution. Fourth, he argues it is not reasonable for him to relocate. Fifth, he claims that the BIA erred in denying his applications for withholding of removal and protection under the CAT.

This court reviews legal conclusions de novo, but with "deference to the BIA's reasonable interpretation of the statutes and regulations." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009) (quoting *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009)). When the BIA issues a reasoned decision rather than summarily affirming the IJ's decision, we review both. *Id.* The court reviews factual findings for substantial evidence. *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014). This is a deferential standard and the BIA's decision will be upheld so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (citation omitted). Administrative factual findings are "conclusive unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added).

**B**

Singh's fourth issue is dispositive. Even if Singh could establish past persecution, he cannot show that the determination that he can safely and reasonably relocate is unsupported.

We have held that "an applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Ndrecaj v. Mukasey*, 522 F.3d 667, 676 (6th Cir. 2008) (citation omitted).

Singh offered his own testimony and the letter from the president of Akali Dal to demonstrate he feared future prosecution. According to Singh's testimony and his father's relocation affidavit, Singh's attackers were still looking for him and would kill him if he returned to Punjab. Yet, an applicant does not have a "well-founded fear of persecution" if he can avoid persecution by moving to another part of the country. 8 C.F.R. § 1208.13(b)(2)(ii). An applicant has the burden of demonstrating that relocation is unreasonable. *Id.* § 1208.13(a).

The IJ found that Singh could reasonably relocate to another part of India and that he did not demonstrate that relocation would be unreasonable. According to his father's affidavit, there are Badal Party members throughout India who could find Singh and report his whereabouts to his original attackers. Singh argues his Sikh attire and attendance at Sikh temples would also make him readily identifiable in any part of India. But as the DHS country-conditions report indicated, Sikhs can safely relocate and practice their religion within India; this includes low-profile Sikh nationalists such as Singh, unless they are of interest to central police authorities (which Singh does not claim). Singh does not establish that his five or six attackers have the inclination or the ability to track him down if he relocated to another part of India, nor that his

7

political activity would make him a target for persecution. Singh has not met his burden of showing that relocation is unreasonable.

C

As to the petition's last issue for review, the BIA did not err in affirming the IJ's decision denying Singh's applications for withholding of removal and protection under the CAT. To be entitled to withholding of removal, Singh must show that there is a "clear probability of persecution" if he is removed to his native country. *See* 8 U.S.C. § 1231(b)(3)(A). This more-likely-than-not standard is more stringent than the "well-founded fear" standard applicable to asylum claims. *See Mikhailevitch*, 146 F.3d at 391. Because Singh failed to meet the well-founded-fear standard, it follows that he has not met the clear-probability standard.

An alien may not be removed to his native country if he establishes that it is more likely than not that he will be tortured there. 8 C.F.R. § 1208.16(c)(2). "Although aliens need not demonstrate any of the five statutory grounds for asylum or withholding-of-removal eligibility for a CAT claim, the proof required to demonstrate that *torture* is more likely than not is more stringent than the proof required to demonstrate that *persecution* is more likely than not." *Singh v. Yates*, Nos. 15-4332/16-3585, 2017 WL 385779, at *2 n.3 (6th Cir. Jan. 26, 2017) (emphases in original) (citing *Berri v. Gonzales*, 468 F.3d 390, 397–98 (6th Cir. 2006)). Because Singh has failed to establish persecution, however, he has also failed to establish that he would be subject to torture. *Cf. Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 501, 503 (6th Cir. 2007) (multiple beatings insufficient to rise to the level of torture).

IV

For the foregoing reasons, Singh's petition for review is **DENIED**.