NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0147n.06

Case No. 25-3521

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 20, 2026
KELLY L. STEPHENS, Clerk

HECTOR PEREZ-MEJILLA, )
)
    Petitioner, )
)
)
v. )
)
)
PAMELA BONDI, Attorney General, )
)
    Respondent. )
)
)

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

OPINION

Before: BUSH, READLER, and DAVIS, Circuit Judges.

READLER, Circuit Judge. Hector Perez-Mejilla petitions for review of the Board of Immigration Appeals decision rejecting his application for asylum, withholding of removal, and protection under the Convention Against Torture. Seeing no error, we deny the petition.

I.

Perez-Mejilla, a citizen of Guatemala, entered the United States unaccompanied at age 11. The Department of Homeland Security intercepted him shortly thereafter. After serving Perez-Mejilla with a Notice to Appear in removal proceedings, DHS released him into his father's custody in Ohio. During a later administrative proceeding, Perez-Mejilla conceded removability but applied for relief from removal via asylum, withholding of removal, and the Convention Against Torture (CAT).

That turns our attention to the time before Perez-Mejilla arrived in the United States, when he resided in Guatemala with his grandmother. Perez-Mejilla described the period during his

administrative hearing before an Immigration Judge (IJ).  As he explained, the property on which he lived was the subject of a perennial land dispute between his grandfather's immediate family, of which Perez-Mejilla was a member, and his more distant cousins.  Even at a young age, Perez-Mejilla became a target in the conflict.  His cousins would say "horrible word[s]" to him and his grandmother when encountering them on the street.  A.R. at 122.  The cousins also harassed and threatened Perez-Mejilla on his way to school or when visiting his uncles.  In one 2007 incident, several cousins approached Perez-Mejilla's grandmother's house with machetes and sticks and threatened to kill Perez-Mejilla and his grandmother and burn down their house if they did not give up the land.  When asked why he was targeted in this way, Perez-Mejilla explained that his cousins believed they owned the land on which Perez-Mejilla and his grandmother lived and would threaten others who tried to live there, even relatives.  Perez-Mejilla nonetheless did not consider relocating elsewhere in Guatemala because he was not going to abandon land that "ha[d] been in the family for many generations." *Id.* at 137.

At times, Perez-Mejilla's family sought recourse from the police and the court system.  Yet even a judgment declaring that the land belonged to Perez-Mejilla's family did not put an end to the feud.  Eventually, after the cousins began felling trees on the property, Perez-Mejilla's grandmother decided it would be best for him to join his father in the United States.  He did so, which resulted in the administrative proceedings now on appeal.

At the close of Perez-Mejilla's administrative hearing, the IJ denied Perez-Mejilla's application on multiple grounds.  Perez-Mejilla later sought review from the Board of Immigration Appeals.  The Board, however, affirmed on the basis that Perez-Mejilla failed to establish past persecution or a well-founded fear of future persecution for his asylum and withholding claims.

As for Perez-Mejilla's CAT claim, the Board noted that Perez-Mejilla did not pursue the claim on appeal. This petition for review followed.

## II.

When the Board issues a written decision, we examine that decision and review the IJ's decision only to the extent that the Board adopts the IJ's reasoning. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We "review the entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings—for substantial evidence," meaning we will not disturb the Board's conclusions unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Urias-Orellana v. Bondi*, --- S. Ct. ---, 2026 WL 598435, at \*5 (2026) (quoting 8 U.S.C. § 1252(b)(4)(B)). For example, and relevant here, we review for substantial evidence the Board's "determination whether a given set of undisputed facts rises to the level of persecution under [8 U.S.C.] § 1101(a)(42)(A)." *Id.*

A. Perez-Mejilla chiefly contests the denial of his respective claims for asylum and withholding of removal. For today's purposes, we can address the two in tandem. After all, his asylum claim turns on whether he demonstrated either "past persecution or a well-founded fear of future persecution." *Cristales-de Linares v. Bondi*, 161 F.4th 401, 407 (6th Cir. 2025) (citing 8 U.S.C. § 1101(a)(42)). And if he has not cleared that hurdle, then he cannot clear the parallel, yet higher, hurdle to show a "clear probability" of future persecution for his withholding claim. *Id.* at 408. For both claims, if Perez-Mejilla demonstrates that he endured cognizable "past persecution," he gains a presumption of future persecution. *Mbonga v. Garland*, 18 F.4th 889, 894 (6th Cir. 2021) (citing 8 C.F.R. § 1208.13(b)(1) (2020)) (asylum); *West v. Barr*, 830 F. App'x 757, 765 (6th Cir. 2020) (citing 8 C.F.R. § 1208.16(b)(1) (2020)) (withholding). If not, Perez-Mejilla must

independently substantiate future persecution. *See Kukalo v. Holder*, 744 F.3d 395, 401 (6th Cir. 2011) (citing *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006)). In so doing, he bears the burden to show why he cannot reasonably avoid persecution by relocating within Guatemala. *See Cristales-de Linares*, 161 F.4th at 412–13 (citing 8 C.F.R. § 1208.13(a), (b)(2)(ii) (2025)).

The Board rejected Perez-Mejilla's claims on the ground that he failed to establish either past or future persecution. Perez-Mejilla challenges both determinations here. Begin, then, with past persecution. Perez-Mejilla contends that the Board erred in concluding that the threats and harassment he received over the land dispute did not amount to persecution. In particular, Perez-Mejilla emphasizes that his cousins threatened him on his way to school or when visiting his uncles. All of this raises the question, what amounts to "persecution" for purposes of federal immigration law? Though Congress has not defined the term, we understand it to mean something more than "treatment our society regards as offensive." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (quoting *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004)). For instance, "a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty" do not qualify as "persecution." *Perez v. Garland*, No. 23-3852, 2024 WL 1804635, at *2 (6th Cir. Apr. 25, 2024) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).

Perez-Mejilla falls short of that benchmark. None of the encounters he describes resulted in violence. And "verbal harassment," as here, "rarely amounts to persecution." *Galicia v. Garland*, No. 22-3650, 2023 WL 3318393, at *3 (6th Cir. May 9, 2023) (quoting *Mikhailevitch*, 146 F.3d at 390). Rather, "[o]nly threats of a most immediate and menacing nature can possibly qualify as past persecution." *Japarkulova*, 615 F.3d at 701 (citation modified). The closest Perez-Mejilla comes to clearing that bar relates to a 2007 incident in which several cousins showed up

4

to his grandmother's home with sticks and machetes and threatened to kill her and Perez-Mejilla and burn their house down. Perez-Mejilla and his grandmother, however, were able to defuse the situation by locking up the house and leaving for a time. What is more, that episode happened roughly seven years before Perez-Mejilla left for the United States. All the while, Perez-Mejilla remained living on the disputed land—and his grandmother continues to do so today—confirming that Perez-Mejilla's cousins' threats were not of "a most immediate and menacing nature." *Japarkulova*, 615 F.3d at 701 (citation modified) (finding threats insufficient when petitioner did not flee the country until years later). Thus, substantial evidence supports the Board's conclusion that Perez-Mejilla failed to demonstrate past persecution. *Urias-Orellana*, 2026 WL 598435, at *5.

Even absent past persecution, Perez-Mejilla says, the Board still erred in writing off the likelihood of future persecution should he return to Guatemala. But he offers no evidence on this front beyond his already insufficient evidence of past persecution. *See Kukalo*, 744 F.3d at 401 (rejecting "same evidence" found insufficient for "past persecution"). The Board, setting that weakness aside, observed that he failed to show why internal relocation was not a feasible option to avoid any future persecution, a finding Perez-Mejilla challenges here. To that end, at his hearing, Perez-Mejilla testified that the threat his cousins posed was tied specifically to his presence on the disputed land. And when asked why he could not move elsewhere in Guatemala, Perez-Mejilla stated simply that he would not consider living away from his family's land. To Perez-Mejilla's mind, the Board's failure to find the likelihood of future persecution "undermine[d] the importance" of his ancestral land. Pet'r's Br. 16–17. But, as the Board pointed out, Perez-Mejilla's relocation to the United States and his request to remain demonstrates that he is, in fact, willing and able to live away from his family's land. No more availing is Perez-Mejilla's

assertion that the Board, in assessing the likelihood of future persecution, failed to consider other factors like "the safety conditions" and "resources" in "potential relocation areas." Pet'r's Br. 22. Perez-Mejilla carried the burden to articulate those matters, not the Board. *See Cristales-de Linares*, 161 F.4th at 413 (citing 8 C.F.R. § 1208.13(a), (b)(2)(ii) (2025)). Nor, in any event, was the Board required to give a detailed explanation for affirming the IJ. *See Akhtar v. Gonzales*, 406 F.3d 399, 408 (6th Cir. 2005).

Lastly, Perez-Mejilla attacks the IJ's findings as to the other elements of his asylum and withholding claims, which the Board did not address. Setting aside the fact that the Board was not required to grapple with every part of the IJ's reasoning, *see Rongfu Huang v. Holder*, 360 F. App'x 632, 636–37 (6th Cir. 2010), it remains the case that Perez-Mejilla's failure to establish persecution independently sinks his asylum and withholding claims, both before the Board and this Court, *see Kaba v. Holder*, 516 F. App'x 479, 482 (6th Cir. 2013) ("[T]he Board could have denied relief on any one of the bases articulated by the immigration judge."). We thus deny the petition as to these claims.

B. Beyond asylum and withholding, Perez-Mejilla poses a handful of other arguments, all of which are forfeited. For instance, Perez-Mejilla asserts that the Board erroneously deemed his CAT claim abandoned. It did so because Perez-Mejilla's brief before the Board made no mention of a CAT claim. When a party fails to pursue an issue over the course of an immigration proceeding, we typically treat the issue as forfeited. *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 & n.3 (6th Cir. 2020); *see* 8 U.S.C. § 1252(d)(1). The IJ denied Perez-Mejilla's initial application for CAT relief. So his failure separately to raise the claim before the Board prevents us from reviewing it on appeal. *See Sebastian-Sebastian v. Garland*, 87 F.4th 838, 852–53 (6th Cir. 2023). And even if we did, Perez-Mejilla's inability to establish persecution for asylum or withholding

purposes means he cannot satisfy the "more stringent" burden to show "torture" under the CAT. *Singh v. Sessions*, 683 F. App'x 463, 468 (6th Cir. 2017) (quoting *Singh v. Yates*, 677 F. App'x 985, 988 n.3 (6th Cir. 2017)); *see Bah v. Gonzales*, 462 F.3d 637, 643 (6th Cir. 2006).

Next, Perez-Mejilla argues that we should terminate his removal proceedings because the Notice to Appear he received at the outset of his case did not contain the date or time of his initial hearing. As Perez-Mejilla admits, this is his first time objecting to the notice. Nonetheless, he posits that his failure to exhaust the issue is excusable because the cases from which he purports to derive his argument—*Pereira v. Sessions*, 585 U.S. 198 (2018), and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021)—were decided after his IJ hearing. But, as we have already observed, neither case, important as it may be, effected an intervening change in law that could excuse a forfeiture. *See Espinoza-Anguiano v. McHenry*, No. 24-3219, 2025 WL 405108, at *2 (6th Cir. Feb. 5, 2025) (citing *Meraz-Saucedo v. Rosen*, 986 F.3d 676, 683 (7th Cir. 2021)). In any event, the "'intervening-change-in-law' doctrine" provides an excuse only if the "issue was not available to the party" during the administrative process. *Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 592 (6th Cir. 2021) (citing *Hormel v. Helvering*, 312 U.S. 552, 558–59 (1941)). Here, Perez-Mejilla had both *Pereira* and *Niz-Chavez* available to him when litigating before the Board, yet failed to raise his defective notice argument then (and offers no explanation as to why). *See id.* As such, we cannot consider this untimely objection. *See Sebastian-Sebastian*, 87 F.4th at 852–53.

Lastly, Perez-Mejilla claims the Board wrongfully denied him voluntary departure. We see no record evidence, however, that Perez-Mejilla requested that relief. He says he filed a "motion to remand" before the Board regarding his eligibility for voluntary departure, yet he does not direct us to any portion of the administrative record reflecting as much. With our review

constrained to that record, *see* 8 U.S.C. § 1252(b)(4)(B); *Lin v. Holder*, 565 F.3d 971, 979 (6th

Cir. 2009), this argument is forfeited as well.

\*      \*      \*      \*      \*

We deny the petition for review.